IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

Lester Lamont Evans,         )
                         )     Civil Action No. 8:05-cv-00163-CMC-BHH
          Plaintiff,   )
                         )
   vs.                  )     **REPORT OF MAGISTRATE JUDGE**
                         )
Matthew B. Hamidullah,    )
                         )
         Defendant.  )
_____)

     The petitioner, Lester Lamont Evans, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.  The respondents have filed a motion for summary judgment seeking dismissal of the petition.

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

### STATEMENT OF THE FACTS

     The Petitioner, Lester Evans, Federal Register Number 09252-021, is currently incarcerated at the Federal Correctional Institution, Estill, South Carolina (hereinafter "FCI Estill").  He is serving a 100 month term of incarceration imposed by the United States District Court for the Southern District of Georgia for violations of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Cocaine, and 18 U.S.C. § 846, Conspiracy with Intent to Distribute Cocaine. This sentence was imposed on March 7, 1997.  The petitioner's anticipated release date is August 23, 2008, via Good Conduct Time release.  (Mem. Summ. J. Ex. 1.)

     As of Monday, July 5, 2004, the petitioner was assigned to F-Unit at the  Federal Prison Camp at FCI Estill. (Mem. Summ. J. Ex. 4.)  At approximately 1:30 a.m., correctional staff initiated a special count at the Camp.  Id.  This was an unscheduled, surprise count,

designed to ensure that the inmates were all in their proper areas. At approximately 1:40 a.m., officers called in a count that was incorrect, and short by two inmates. *Id.* Per standard policy, the count was conducted a second time, and again was short by two inmates. *Id.* At approximately 1:50 a.m., additional staff arrived in F Unit and a "bed book" count was performed, in order to identify which of the 130 inmates were missing. (Mem. Summ. J. Exs. 4, 5, 6, 7.) At approximately 2:15 a.m., the bed-book count was completed and staff determined that the petitioner and another inmate, Kenith Turner, #41074-018, were missing from their assigned beds. *Id.*

The respondents contend that a search of the entire housing unit, including the common rooms and bathrooms, was conducted but the two missing inmates were not located. (Mem. Summ. J. Ex. 6.) A search of the areas outside the housing unit was also conducted, but the two inmate were not located. (Mem. Summ. J. Exs. 4 and 6.) The petitioner contends that the F-Unit and associated bathrooms were not searched.

At 3:00 a.m., a scheduled count was conducted in F-Unit by two different staff members. (Mem. Summ. J. Exs. 4, 5.) That count confirmed that all 130 inmates were present in the Unit. (Mem. Summ. J. Exs. 4, 5, 7.) The petitioner and the other inmate who had previously been missing, were both found in their assigned beds.

The petitioner contends that he had extreme pain in his left testicle and lower abdomen and that he went to the bathroom to try and relieve the pain. He contends that he was in the restroom for a considerable length of time and was wearing headphones all the while. He alleges that he returned to his bed not knowing that the counts had been conducted or that he had been identified as missing.

At approximately 5:00 a.m. that same day, an incident report was prepared by an Officer J. Early charging both the petitioner and the other inmate with Escape from an Open Institution, Code 200. (Mem. Summ. J. Ex. 9.) The notice section of that incident report stated as follows:

2

> On Monday, July 05, 2004, during the 1:30 a.m., Additional Count at the FPC. Inmate Evans, Lester, Reg. No. 09252-021, Unit F, was [sic] present. A bad count of 128 was called into the Control Center at 1:40 a.m. A second count was conducted and another bad count called into the Control Center with 128. A Bed Book Count was then conducted and completed at approximately 2:15 a.m. The Bed Book Count identified inmate Evans as not being present in Unit F. A search of the entire FPC and surrounding area to include the woods was conducted. This search provide negative for inmate Evans. Additional at 3:00 a.m., count was again conducted in Unit F. A good count of 130 inmates was called into the Control Center. Inmate Evans was located in his cube F03-311L. After the count, inmate Turner was escorted to the Special Housing Unit.

(Mem. Summ. J. Ex. 9.) The incident report was delivered to petitioner at approximately 6:15 a.m. *Id.* Due to obvious errors in the report, described more fully *infra* at 7-8, Officer Early rewrote the incident report at approximately 8:00 a.m. on Tuesday, July 6, 2004. (Mem. Summ. J. Ex. 10.)  This report described the incident as follows:

> On July 5, 2004, at 1:30 a.m. a Special Count was announced at the Satellite Prison Camp. F Unit was counted twice both resulting in a bad count. At approximately 2:15 am a bed book count was completed which identified inmates Kenith Turner #41074-018 and Lester Evans #09252-021, as missing and unaccounted for. A search of the entire camp and surround [sic] area was conducted. Neither inmate could be located. During the 3:00 am count both inmates were discovered in F Unit.

(Mem. Summ. J. Ex. 10.) An investigation was conducted on July 14, 2004. (Mem. Summ. J. Ex. 10.)  The petitioner was advised of his rights during the investigation and it was confirmed that he had received a copy of the new incident report. *Id.*

The matter was referred to the Unit Discipline Committee ("UDC") for further processing. *Id.* The UDC conducted a hearing into the charges on July 14, 2004. *Id.* When offered the chance to make a statement, the petitioner claimed that the incident report did not meet the time frames required by policy and demanded it be expunged. *Id.*

The UDC referred the matter to the Discipline Hearing Officer ("DHO") due to the seriousness of the charges. *Id.* The petitioner was advised of his rights before the DHO, including the right to call witnesses and the right to assistance from a staff representative.

3

(Mem. Summ. J. Ex. 11.)  The petitioner requested a staff representative.  *Id.*  The petitioner also asked that four inmates and four staff be called as witnesses at his hearing.  *Id.*

The DHO hearing was conducted on July 29, 2004. (Mem. Summ. J. Ex. 12.)  The petitioner presented a written statement, as well as inmate and staff witnesses.  *Id.*  After consideration of all the evidence before him, the DHO determined that the petitioner committed the prohibited act as charged.  *Id.*  In his written report, the DHO detailed the evidence he relied upon, as well as the reasoning for his findings.  *Id.*

The DHO imposed the following sanctions for the prohibited behavior: 30 days in disciplinary segregation, disallowance of 27 days good conduct time, and a recommendation for disciplinary transfer from the Camp, as well as a loss of social visiting privileges for 180 days.  *Id.* at 6.  The petitioner was advised of his right to appeal the proceedings under the Administrative Remedy Procedure.  *Id.* at 7.  The petitioner filed his administrative appeal of the disciplinary action to the Regional Director, which was denied.  (Mem. Summ. J. Ex. 2.)  He also filed an appeal to the Office of the General Counsel, which was also denied. (Mem. Summ. J. Ex. 3.)

## LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999).  A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court

4

"conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

## SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## LAW AND ANALYSIS

### I.     DUE PROCESS IN PRISON DISCIPLINE PROCEEDINGS

The petitioner essentially makes a single complaint. He alleges that the revised incident report constitutes a violation of his due process rights insofar as it prevented him from making a proper defense at the DHO hearing and concealed the existence of the original report from those individuals responsible for making the disciplinary decision. (*See*, *e.g.*, Pet. at 9,12,17.) The Court disagrees that the petitioner's due process rights have been violated as alleged.

*Wolff v. McDonnell*, 418 U.S. 539 (1974) prescribes the due process required in

5

prison discipline hearings: (1) an impartial tribunal; (2) written notice of the charges and underlying evidence at least twenty-four hours prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action. *Id.* at 563-72. Although he complains that he did not have time to prepare a defense, the petitioner does not earnestly contend that the requirements of *Wolff,* including the 24-hour notice requirement, were not satisfied, and the record does not suggest otherwise.

The petitioner was originally given advance written notice of the charges on July 5,2004, substantially more than 24 hours before either his initial UDC hearing on July 14, 2004, or the DHO hearing, on July 29, 2004. (Mem. Summ. J. Ex. 9, 10,12.)  More importantly, the petitioner received additional notice of the same charges, when the revised incident report was delivered to him on July 9, 2004,  five days before his initial UDC hearing and nearly three weeks prior to the hearing before the DHO. (Mem. Summ. J. Ex. 10, blocks 14-16). Accordingly, the petitioner's claim that the revised report prevented him from preparing a defense is untenable.  He had nearly three weeks from the date he received the revised report to so prepare.

Moreover, at the DHO hearing, the petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative and he availed himself of those opportunities. (Mem. Summ. J. Ex. 12 §§II and III.)  The record of the hearing further reflects that the petitioner appeared and made a statement to the decisionmaker, as did his staff representative. (Mem. Summ. J. Ex. 12 §III.)  Statements were obtained from all of the inmate witnesses and telephonic testimony was taken from one of the staff witnesses. (Mem. Summ. J. Ex. 12 §III.) The remaining staff witnesses were not called due to the fact their statements would have been repetitive. *Id.* Finally, the record of the hearing reflects the evidence relied upon and the reasons for the

6

decision and the sanctions imposed. (Mem. Summ. J. Ex. 12.)  As stated, the petitioner does not, and cannot, contend otherwise.  The petitioner does not explain what additional defense he would have marshaled given extra time.  Regardless, he was not entitled to additional time under *Wolff*.

## II.    NO PREJUDICE

Even if there were some arguable due process violation related to the revised report, the petitioner suffered no actual prejudice.  *See Cobble v. Smith*, Slip Copy, No. 04-1677, 2005 WL 3030591, at *6 (6th Cir. Nov. 10, 2005) ("Finally, even if there were some arguable due process violation, the evidence against Cobble means that the violation was harmless, caused no prejudice to Cobble, and does not support habeas relief.").  It is clear from reading the *original* incident report, that there were several errors made in the reporting of the incident.  (See Mem. Summ. J. Ex. 9.)  First, it appears that the original report should have read that inmate Evans was "not" present at the 1:30 a.m. count.  *Id.*  Second, the report references inmate Turner in the concluding sentence, when it likely should reference inmate Evans or both inmates.  *Id.*

The petitioner, however, does not complain that revisions to these errors caused him prejudice.   In fact, in his petition he quotes the original report and actually inserts a [sic] after the phrase "Inmate Evans . . . was present," confirming his agreement that the original report was in error and in need of correction, at least as to this point.  Instead, the petitioner is singularly convinced that the report was revised to conceal the fact that a unit search was not performed and that he would have been found in the bathroom if it had.  The petitioner's interpretation of the reports, however, is simply unreasonable on its face.

The Court disagrees that there exists any material difference between the original and the revised report <u>as to the description of the extent of the search that was conducted</u>.  First, neither the original nor the revised report can reasonably be interpreted to imply that a unit search was *not* performed.  The original report states, "A search of the *entire FPC*

7

[Federal Prison Camp] and surrounding area to include the woods was conducted." (Mem. Summ. J. Ex. 9 (emphasis added).)  Similarly, the revised report states: "A search of *the entire camp* and surround [sic] area was conducted." (Mem. Summ. J. Ex. 10 (emphasis added).)  Both expressly indicate that the entire camp was searched, presumably including the unit itself.  But whether or not the Unit and the bathroom where the petitioner claims to have been during the count was actually searched is irrelevant.  The only relevant issue, in regards to the petitioner's claim, is whether the revised report can reasonably read to suggest that a unit search was performed where the original cannot.  That question can only be answered in the negative.  Both reports make the same implication.

In other words, whatever the respective language of the reports implies or does not imply about the extent of the search is frankly immaterial to the inquiry because the reports, as to this point, are essentially identical.  Even assuming that the original report implied, as the petitioner contends, that *no* unit search was conducted, then there can be no debate that the revised report is also pregnant with the same implication.  The language of the two reports is all but verbatim and in neither report is it expressly stated that a unit search was performed.  Accordingly, even assuming *arguendo* that a *de minimus* procedural violation occurred because of the mere fact of the revision, which the Court rejects, the petitioner has not been prejudiced.  The revised report makes the same implication as the original, whatever that may be.

As to the petitioner's contention that the revised report somehow concealed the truth and existence of the original report, the Court also finds this concern entirely without basis. It is clear that at every stage of the disciplinary process the existence and substance of the original and revised reports was known and considered.  (Pet. Exs. F, G, H; Mem. Summ. J. Exs. 2, 3, 12)  For the same reasons, the Court rejects that there has been any violation of the various federal statutes and regulations cited by the petitioner, to wit 18 U.S.C.

8

1001(a), which likely would have been deemed an insufficient basis for habeas relief even were the Court to conclude otherwise.

The petitioner further contends that there is no policy authorizing the revision of the incident report. Of course, he has not pointed to any policy prohibiting such revision either. Moreover, the authority to revise the report follows naturally from the *Wolff* notice requirement itself that the petitioner be made aware of the charges pending against him. *See Carter v. Workman*, 121 Fed. Appx. 793, 795 (10 th Cir. 2005) (finding that rewritten incident report which changes charge from twisting officer's hand to twisting officer's wrist still provided sufficient notice of charge to present a defense); *Hadley v. Peters*, 841 F. Supp 850, 856 (C.D. Ill. 1994) (no due process violation when incident report is rewritten by investigator rather than original reporting employee); *Johnson v. Rucker*, 1989 WL 49150, at *2 (N.D. Ill.1989) (untimely rewriting of incident report does not implicate due process). In other words, a revised report is required to properly apprise an inmate of the charges pending against him, if the correctional facility intends on presenting different charges or a set of differing facts than those presented in the first incident report, as the petitioner here contends.

### III.    DHO DETERMINATION

To the extent the petitioner attempts to challenge the determination of the DHO itself, this basis for relief also fails. The Court does not know whether or not the petitioner was in the restroom during first counts or not. But if he has been wrongly accused it is not the result of any defect in process or lack of evidence to the contrary. All that is required is that "some evidence" supports the prison discipline decision. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The petitioner nowhere contends that the DHO decision is without evidentiary support. Rather, he simply disagrees with his conclusion. The record reveals that there was certainly "some evidence" to support the

DHO decision and that the DHO thoroughly considered the petitioner's position and complaints concerning the revised report.

In his written report, the DHO detailed the evidence he relied upon, as well as the reasoning for his findings. (Mem. Summ. J. Ex. 12 §§ IIV & V.) The DHO explained that he carefully weighed the petitioner's statements, the staff and inmate witnesses the petitioner presented, and the statements of the reporting officer and other staff, finding that the greater weight of the evidence supported a finding that the petitioner did escape from custody. *Id.* Specifically, the DHO did not believe that the petitioner could have been in the bathroom throughout the time between the first two counts, the bed book count and throughout the searches of the area without being located. *Id.* The DHO believed it more likely that the petitioner left the FPC at some time prior to the 1:30 a.m. special count and returned prior to the scheduled 3:00 a.m. count, hoping not to be caught. *Id.*

Importantly, the DHO noted that the inmate statements did not directly support Mr. Evan's contentions. *Id.* One of the inmate witnesses stated that he saw the petitioner leaving the bathroom before the bed book count, while the other two said they saw him leaving the bathroom after the bed book count. *Id.* The DHO noted that the petitioner 's argument that there would have been mud on his shoes if he had been outside that morning was not convincing, as the logical place to go after returning from outside was to the bathroom, where petitioner could have washed off any mud that might have been on him or his shoes. *Id.* These findings in conjunction with the testimony and reports of the staff witnesses and reporting officer that the petitioner was not present in the Camp for the counts and subsequent search certainly qualifies as "some evidence" to support the DHO decision.

10

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondents'
motion for summary judgment be granted.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

November 30, 2005
Greenville, South Carolina

11